UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-472 JGB (DTBx)** | Date | October 28, 2025 |
|---|---|---|---|
| Title | *Fabrique Innovations, Inc. v. CVS Pharmacy, Inc.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss First Amended Complaint without prejudice (Dkt. No. 18); and (2) VACATING the November 17, 2025 Hearing (IN CHAMBERS)

Before the Court is defendant CVS Pharmacy, Inc.'s ("Defendant" or "CVS") motion to dismiss first amended complaint ("Motion," Dkt. No. 18.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the November 17, 2025 hearing.

## I.   BACKGROUND

On February 21, 2025, plaintiff Fabrique Innovations, Inc. ("Plaintiff" or "Fabrique") filed a complaint against Defendant. (Dkt. No. 1.) On April 14, 2025, Defendant filed a motion to dismiss complaint. (Dkt. No. 13.) On May 5, 2025, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 16.) The FAC alleges three causes of action: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, and (3) unjust enrichment. (FAC at 8-11.) On May 7, 2025, Defendant filed a notice of withdrawal of motion to dismiss. (Dkt. No. 17.) On May 17, 2025 Defendant filed a motion to dismiss the FAC. ("Motion," Dkt. No. 18.) Plaintiff filed an opposition on June 2, 2025. ("Opposition," Dkt. No. 20.) On June 30, 2025, Defendant filed a reply. ("Reply," Dkt. No. 22.)

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

A.   **Contract Between Fabrique & CVS**

Plaintiff entered into an oral agreement with CVS, which operates retail establishments, around June 2023 in which Plaintiff would sell Defendant electronic Bluetooth speakers, under the trade names "Bitty Boomers," "Bitty Boxes," and "Bitty Plushies" (collectively, "Bitty Boomers"), and Plaintiff would manufacture, deliver, and install permanent custom-made displays for the Bitty Boomers.  (FAC ¶¶ 1-4, 23-27, 29.)   Defendant would maintain the displays, sell the goods, and resupply the Bitty Boomers when stock was depleted at around 4,200 stores nationwide.  (FAC ¶¶ 27-29.)  Pursuant to the agreement, Defendant was required to supply inventory information to Plaintiff to allow Plaintiff to replenish the Bitty Boomers.  (Id. ¶¶ 5, 29(f).)  Plaintiff's representative, who was usually located in California, and Defendant's representatives, who were usually located in Rhode Island, negotiated the agreement virtually.  (Id. ¶¶ 23-24.)  At the time of the negotiation, Defendant suffered a theft rate in its stores in excess of 45%.  (Id. ¶ 36.)  Defendant accepted the agreement by approving the creation of displays by its preferred vendor, one more expensive than Plaintiff's preferred vendor, allowing the displays to be placed in its stores, and accepting $1.3 million worth of Bitty Boomers.  (Id. ¶¶ 31, 35.)  Under the agreement, Plaintiff manufactured additional Bitty Boomers valued in excess of $1.8 million.  (Id. ¶¶ 34, 37.)

However, instead of displaying the Bitty Boomers, Defendant allowed the theft of nearly half of all Bitty Boomers, and/or removed the Bitty Boomers to prevent theft, and/or placed them in inaccessible locations preventing their sale.  (Id. ¶¶ 6., 38-40.)  As a result, Defendant's shelves dedicated to Bitty Boomers were frequently empty and customers could not access or purchase the Bitty Boomers.  (Id. ¶¶ 7, 9, 41-42.)  Defendant's practice of concealing Bitty Boomers also prevented customers from engaging in impulse purchases of the Bitty Boomers.  (Id. ¶ 10.)  Defendant failed to properly account for and maintain adequate stock of Bitty Boomers in stores.  (Id. ¶ 43.)  Defendant maintains a policy of not confronting shoplifters and not effectively preventing theft.  (Id. ¶ 45.)  Defendant failed to warn Fabrique of the "absurdly high theft rates" faced by Defendant such as to allow Fabrique to modify the packaging of the Bitty Boomers to deter theft and shrinkage or to avoid entering into the agreement.  (Id. ¶¶ 12, 36.)  Defendant first notified Fabrique of the "high shrink rates" of Bitty Boomers on July 10, 2024.  (Id. ¶ 13.)  Defendant failed to pay Fabrique for $1.3 million worth of Bitty Boomers.  (Id. ¶ 48.)  Plaintiff has been forced to store the additional Bitty Boomers it had manufactured in reliance on the agreement.  (Id. ¶¶ 15, 17.)  As a result, Plaintiff has faced losses in excess of $3.5 million due to Defendant's actions.  (Id. ¶ 16, 49.)  CVS is aware of and/or has confirmed the agreement by sending emails referring to the agreement and referencing it in phone calls.  (Id. ¶ 51.)

//
//

## III.  LEGAL STANDARD

A.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[1], a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint— as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

//
//

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

B.     **Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.   DISCUSSION

A.     **Breach of Contract**

Defendant argues that Plaintiff fails to allege the existence or breach of a contract. (Mot. at 10.)  As a preliminary matter, the Court must determine which state law applies.  Defendant argues that New York, or alternatively Rhode Island, law should apply. (Mot. at 5-6.)  Plaintiff responds that California law should apply. (Opp. at 5-6.)  "[A] federal court sitting in diversity must apply the conflict of law rules of the forum."  Rosenthal v. Fonda, 862 F.2d 1398, 1400 (9th Cir. 1988).  In California, courts apply the three-step "government interest" analysis. Id.  First, the Court must determine if the substantive laws of each state differ as applied to this contract.  Id.  The only conflict of law that arises as to the three claims is the availability of equitable exceptions to the statutes of fraud.  (Mot. at 10 n.5; Opp. at 6; Reply at 2.)  Because the Court finds, as discussed below, that no contract exists, the Court need not determine whether the alleged contract satisfies the statute of frauds.  Therefore, no conflict of law exists as California, New York, and Rhode Island law apply the same elements to breach of contract claims.  (Mot. at 10 n.5.)

To establish a breach of contract under California law, Plaintiff must demonstrate: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (Cal. 2011).  The Court first examines whether Plaintiff has pled the existence of a valid contract.  In the absence of a written contract, "a complaint must include the essential terms or legal effect of the contract sufficient to provide the defendant with notice of the contract allegedly breached."  J D Factors, LLC v. Reddy Ice Holdings Inc., No. CV 14–06709 DDP (FFMX), 2016 WL 6996152, at *2 (C.D. Cal. June 6, 2016). "Whether a contract is sufficiently definite and certain in its essential terms to be enforceable is a question of law for the court." POWERbahn, LLC v. Zwift, Inc., No. CV-17-01393-BRO-MRW, 2017 WL 11635265, at *2 (C.D. Cal. Oct. 19, 2017) (citing Inamed Corp. v. Kuzmak, 275 F. Supp. 2d 1100, 1116 (C.D. Cal. 2002)).  "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." Unihan Corp. v. Max Grp. Corp., No. CV-09-07921-MMM-PLA, 2011 WL 6814044, at *6 (C.D. Cal. Dec. 28, 2011) (citing Ladas v. California State Automobile Ass'n., 19 Cal.App.4th 761, 770, (Cal. Ct. App. 1993)).  However, "courts will

not uphold agreements which contain indefinite and uncertain provisions regarding the obligations imposed upon the parties thereto." Richards v. Oliver, 162 Cal. App. 2d 548, 561, (Cal. Ct. App. 1958)

Defendant argues that the alleged oral contract terms "are far too indefinite and uncertain to plead an enforceable contract for the sale of goods." Plaintiff responds that both parties entered into a contract "for services and for goods" with the following terms: (1) "CVS would purchase Bitty Boomers from Fabrique and would pay Fabrique for the Bitty Boomers upon receipt of Fabrique's invoices. Each such order would be placed by CVS and paid promptly by CVS." (2) "Fabrique would purchase custom made displays for the Bitty Boomers, to be emplaced as 'end caps' at the aisles in DVS retail stores. The displays were to be manufactured for this purpose at Fabrique's expense by a third party. The cost to Fabrique of this manufacture was over $454,000." (3) "Fabrique would retain a third party to go to each CVS store and place the Bitty Boomer displays. The cost to Fabrique was over $200,000." (4) "Fabrique would have Bitty Boomers manufactured specifically for this agreement, for sale to CVS as the inventory on the shelves was diminished." (5) "CVS and Fabrique would place Bitty Boomers on sale in at approximately 4,200 of CVS's stores nationwide." (6) "CVS would track the on-hand inventory of Bitty Boomers for each store and inform Fabrique when more supply was needed to keep the displays reasonably full or to participate in a swap out and in of a particular product SKU." (FAC ¶ 29; Opp. at 8-9.) The Court agrees with Defendant that the oral contract alleged by Plaintiff is too vague to be enforceable.

Plaintiff does not allege any specific quantity or amount of the three different types of Bitty Boomers that CVS agreed to purchase under the contract. Plaintiff also fails to allege with any specificity the invoices Plaintiff sent to Defendant. Instead, Plaintiff summarily alleges that CVS "breached the terms of the agreement by failing to pay the invoices for over $1.3 million in Bitty Boomers suppled to CVS by Fabrique." (FAC ¶ 48.) Plaintiff provides no information on the specifics of these invoices, which would make it difficult for the Court to "determine the scope of the duty and the limits of performance." Unihan Corp., 2011 WL 6814044, at *6. This lack of specificity also makes it difficult for the Court to determine whether Defendant "breached the terms of the agreement by failing to reorder such goods when they were stolen, or when the quantities of goods were otherwise diminished." Finally, the Court is unable to measure based on the terms of the contract presented the "sufficient time and quantity" required "as to justify Fabrique's expenditures." (FAC ¶ 57.) Even if Plaintiff had provided a measurable unit of time, Plaintiff does not allege a contract term obliging CVS to make sufficient purchases to justify Fabrique's expenditures. Accordingly, the Court **DISMISSES** the breach of contract claim.

### B.     Breach of Implied Covenant of Good Faith and Fair Dealing

Because the Court at this stage finds that Plaintiff has not alleged a valid, enforceable contract, the Court **DISMISSES** the breach of implied covenant of good faith and fair dealing claim. Smith v. City & Cnty. of San Francisco, 225 Cal. App. 3d 38, 49, 275 Cal. Rptr. 17, 23 (Cal. Ct. App. 1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the

covenant is an implied term in the contract.").

### C. Unjust Enrichment

Defendant argues that Plaintiff must demonstrate that Plaintiff "lacks an adequate remedy at law" to request an equitable remedy. (Mot. at 19 (citing Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020)). Plaintiff requests leave to amend to address this argument if the Court were to find that the breach of contract claim fails. (Opp. at 20.) However, "[i]n California, there is not a standalone cause of action for 'unjust enrichment.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). Accordingly, the Court **DISMISSES** the unjust enrichment claim.

### D. LEAVE TO AMEND

Defendant requests that the Court grant the Motion with prejudice. (Motion at 22.) However, leave to amend under Rule 15 should be granted with "extreme liberality." Eminence Cap., L.L.C., 316 F.3d at 1051. Accordingly, the Court **GRANTS** leave to amend within 14 days. Plaintiff shall file an amended complaint, if any, by November 7, 2025.

### V. CONCLUSION

For the above reasons, the Court **GRANTS** the Motion without prejudice, and **VACATES** the November 17, 2025 hearing. Plaintiff shall file an amended complaint, if any, by November 14, 2025.

**IT IS SO ORDERED.**